SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.
OPINION
CHIEF JUSTICE SAYLOR
In this matter we answer a question certified by the United States Court of Appeals for the Third Circuit. The question centrally concerns whether civil-service employment protections apply to the police officers of all borough police departments, regardless of the department's size.
According to the facts as summarized by the federal appellate court, William DeForte and Evan Townsend ("Plaintiffs") were employed as police officers with the Borough of Worthington (the "Borough"). Neither officer was salaried or received benefits. Instead, they were paid hourly wages and, moreover, were simultaneously employed by other police forces. The Borough's police force consisted of four part-time officers, including Plaintiffs. On November 5, 2012, the Borough terminated Plaintiffs' employment without affording any process.
Plaintiffs commenced separate actions, which were consolidated, against the Borough in the federal district court. Plaintiffs asserted, inter alia , that the Borough Code or the Tenure Act conferred a constitutionally-protected property interest in their continued employment, and the lack of any process associated with their dismissal violated their federal due process rights. They requested relief under Section 1983 of the Civil Rights Act of 1871. See 42 U.S.C. § 1983.[1]
*1020 The Borough moved for summary judgment. In ruling on the motion, the district court considered whether Plaintiffs were entitled to civil-service protections in connection with their dismissal under either the Police Tenure Act, see Act of June 15, 1951, P.L. 586, No. 144 (as amended, 53 Pa.P.S. §§ 811 - 816 ) (the "Tenure Act"), or the Borough Code, see Act of Feb. 1, 1966, P.L. (1965) 1656, No. 581 (as amended 53 P.S. §§ 45101 - 46199 ) (repealed).[2]
The Borough Code's civil service provisions for police officers appear in subdivision (j) of Article XI of the code. One such provision states: "No person shall be suspended, removed or reduced in rank as a paid employee in any police force ... of any borough, except in accordance with the provisions of this subdivision." 53 P.S. § 46171. Separately, subdivision (j) indicates that a person employed by a borough police force may only be removed for certain enumerated reasons, none of which is alleged to apply here. See id. § 46190 (referencing such items as mental or physical disability, being intoxicated on the job, neglect of duty, and engaging in political campaigns). These removal restrictions are not implicated, however, as to any police force of less than three members. See id. § 46171. Notably, the Borough Code specifies what qualifies as a police force for purposes of its civil service protections:
Police force as used in subdivision (j) of this article shall mean a police force organized and operating as prescribed by law, the members of which devote their normal working hours to police duty or duty in connection with the bureau, agencies and services connected with police protection work, and who are paid a stated salary or compensation for such work by the borough. Police force as used in this subdivision shall not include: ...
(4) Any extra police serving from time to time or on an hourly or daily basis[.] ...
53 P.S. § 46195.[3]
The Tenure Act likewise provides that a "regular full time police officer," 53 P.S. § 812, may not be suspended, removed, or reduced in rank except in five specified circumstances, none of which applies here. See id. (referring to items similar to those in 53 P.S. § 46190 ). The act applies to boroughs which are not subject to the Borough Code and have a police force of less than three members (as well as to first-class townships with such police forces and all second-class townships). See id. § 811.[4]
*1021 The district court concluded Plaintiffs were part-time officers and, as such, did not devote their normal working hours to police duty for the Borough. The court also expressed that Plaintiffs served from time-to-time and were paid on an hourly basis, thus holding that they were expressly excluded under Section 46195(4). See DeForte v. Borough of Worthington , No. 2:13-cv-00357-MRH, slip op. at 8-9, 2017 WL 1102653 (W.D. Pa. Mar. 24, 2017). Separately, because the Borough had a total of four officers (including Plaintiffs), the court determined that the Tenure Act was not implicated, as that enactment only applies to boroughs with a police force of fewer than three members. See 53 P.S. § 811. In this regard, the district court noted the Commonwealth Court had previously ruled that part-time officers are included in determining the size of a borough police force for Tenure Act purposes. See id. at 14-15 (citing and quoting Mullen v. Borough of Parkesburg , 132 Pa.Cmwlth. 321, 572 A.2d 859, 861 (1990) (holding that the Tenure Act did not apply because "Mullen, whether full-time or part-time, constitutes the third member of the Borough's police force")).
Accordingly, the district court granted summary judgment in the Borough's favor and dismissed each Plaintiffs' Section 1983 cause of action. Plaintiffs appealed to the Third Circuit, which led to the present certification.
In its Petition for Certification, the Third Circuit reasoned that the district court's construction of the statutes might not, by itself, warrant certification as legislation need not govern every entity. However, the appellate court believed the district court's conclusion may be contrary to the General Assembly's intent as understood through a review of judicial decisions. In particular, some common pleas courts have suggested that the "normal working hours" requirement of the Code should be read coterminously with the "regular full time police officer" provision of the Tenure Act. See Huntley v. Boswell Borough , 25 Pa. D. & C.3d 101, 107 (C.P. Somerset 1981) ; Ambrose v. DuPont Borough , 33 Pa. D. & C.3d 362, 369-70 (C.P. Luzerne 1984). The Third Circuit further developed that, in Petras v. Union Township , 409 Pa. 416, 187 A.2d 171 (1963), this Court discussed the concept of fulltime employment as focusing on "whether ... the duties were such that [the employee] was 'available for full employment,' that is on call at any and all times," 187 A.2d at 174,[5] as opposed to considering only the number of days or hours actually worked. See Petition for Certification at 10-11. The court suggested this concept may allow for police officers who maintain alternative, part-time employment to still be considered full-time officers under the Borough Code.
Likewise, the Third Circuit continued, the district court's conclusion may be contrary to an earlier statement by this Court that it was "evident that the legislature intended to establish civil service removal procedures for all police officers regardless of the size of the police force or the political classification of the municipality." George v. Moore , 394 Pa. 419, 421, 147 A.2d 148, 149 (1959). The federal appellate *1022 court suggested that such rationale would support an in pari materia construction of the Borough Code and the Tenure Act, while also acknowledging that the Legislature amended the Borough Code in the post- George timeframe - specifically, when enacting the 1966 code - by clarifying that, for purposes of subdivision (j), a police force does not include "extra police serving from time to time or on an hourly or daily basis," 53 P.S. § 46195(4) - so that the George analysis may no longer be applicable. See Petition for Certification at 12. Overall, the Third Circuit noted that the meaning of term "member" under the Borough Code and Tenure Act remains unresolved and could have a significant impact on boroughs throughout the Commonwealth. Therefore, it certified the following two-part question for this Court's resolution:
Whether, under Pennsylvania law, (1) the Pennsylvania Borough Code and the Police Tenure Act must be read in pari materia , such that every legally authorized police force in Pennsylvania fall[s] under the governance of one of those two state statutes, and (2) if not, whether the same test should be used to determine whether the Tenure Act's two-officer maximum and the Borough Code's three-officer minimum is satisfied.
Id. at 12-13.
Initially, we note that the defendant is a borough and, as its name suggests, the Borough Code only applies to boroughs. See 53 P.S. § 45106 (repealed and replaced by 8 Pa.C.S. § 106 ). Given this particularized context, it seems evident that the "every legally authorized police force in Pennsylvania" phraseology, although stated in universal terms, was meant to refer only to borough police forces, and not police departments of other political subdivisions or to the Pennsylvania State Police. We proceed from that assumption.
Laws which apply to the same persons or things or the same class of persons or things are in pari materia and, as such, should be read together where reasonably possible. The concept has long been recognized in Pennsylvania decisional law, see Commonwealth v. Trunk , 320 Pa. 270, 273, 182 A. 540, 541 (1936), and it is codified in the Statutory Construction Act - where it is also applied to "parts of statutes." See 1 Pa.C.S. § 1932(a) ("Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things."). Traditionally, the rule has been used as an aid to construction when resolving statutory ambiguities. See Oliver v. City of Pittsburgh , 608 Pa. 386, 394, 11 A.3d 960, 965 (2011) ; McFarland's Estate , 377 Pa. 290, 296-97, 105 A.2d 92, 95-96 (1954).
The Borough Code applies to all boroughs. See 53 P.S. § 45106 (repealed). However, its police civil service provisions, as noted, only apply to police forces with at least three members. The Tenure Act is somewhat different in scope in that its civil service provisions apply to boroughs that have police forces of less than three members, as well as certain types of townships. Under these circumstances, in a broad, high-level sense the two enactments are in pari materia since they both address borough police-force employment protections and both are aimed at ensuring that officers are only dismissed for "good and valid reasons." Petras , 187 A.2d at 173. In terms of the civil service provisions of the two enactments, those specific provisions are not in pari materia in the same fashion because they apply to different sets of borough police forces.
With that said, the certified issue as framed by the Third Circuit, particularly when the second part is considered, clearly *1023 envisions an inquiry directed to whether the two pieces of legislation, taken together, should be read as dovetailing so that borough police forces which are not governed by the Borough Code - on the grounds that they have fewer than three members - are covered by the Tenure Act. In this respect, it seems to us that the "such that" clause in part one of the certified question is equally relevant to part two: that is, whether the same officer-counting methodology should be used for both enactments "such that" all borough police forces fall under the governance of one of those two state statutes.
As to this latter inquiry, we answer in the affirmative. We find it significant that the three-or-more provision in the Borough Code, see 53 P.S. § 45171 (repealed); see also 8 Pa.C.S. § 171(a)(1) (reflecting the same three-or-more condition), aligns precisely with the counterpart less-than-three facet of the Tenure Act. See 53 P.S. § 811. It would be difficult to argue this is mere coincidence, particularly as both statutes use the term "members" to describe the requisite size of the police force. Just as important, the Tenure Act is centrally concerned with ensuring that civil-service type procedures attach to police force reductions or dismissals - procedures of the type which are also mandated by the Borough Code in relation to police forces of three or more officers. These close similarities suggest the General Assembly intended for the Tenure Act to fill the gap created by virtue of the Borough Code's failure to extend its protections to borough police forces with fewer than three members.[6]
Our reasoning is consistent with the analysis given in George . In that case, the Court recited that the Borough Code of 1947 had incorporated safeguards - originally enacted as part of the Civil Service Act of 1941 - in favor of officers serving in borough police forces of three or more members. The Court noted that the 1947 code was further amended in 1957 (six years after the Tenure Act was passed) to give borough councils new powers. The defendant borough claimed this latter change had repealed the Tenure Act's protections by implication, so that a borough council's new powers included the ability to summarily dismiss police officers from a borough police force consisting of fewer than three members. See George , 394 Pa. at 420-21, 147 A.2d at 149. The George Court rejected that argument. Recognizing that repeals by implication are disfavored and will not be found absent an irreconcilable conflict, the Court determined that no such conflict existed between the Tenure Act and the 1957 version of the Borough Code. It explained:
The [Tenure Act] granted job employment security to police officers in boroughs having a police force of less than three members. A reading of the [relevant provisions of that act] clearly demonstrates that the legislature re-enacted almost verbatim the same statutory removal procedure found in the Civil Service Act of 1941 .... It is evident that the legislature intended to establish civil service removal procedures for all police officers regardless of the size of the police force ....
* * *
The legislature is presumed to intend to achieve a consistent body of law. Consistency in police removal methods is obtained by a uniform civil service procedure of removal which would not be *1024 attained were the [Tenure Act] repealed. Hence, since the [Tenure Act] contains civil service procedures within the exceptions of the Act of 1957 those procedures must be followed in order to properly dismiss a member of the police force.
Id. at 421-22, 147 A.2d at 149-50 (emphasis added, citation omitted).
Even before George , this Court had made a similar observation with respect to all municipalities covered by the Tenure Act, including boroughs and certain categories of townships:
Legislation [prior] to the date of [the Tenure] Act "only partially endorsed and granted police tenure. In boroughs, incorporated towns and townships of the first class, job tenure was limited to police forces of three or more members and in townships of the second class no job tenure was provided, whatever might be the size of the police force. Evidently to remedy an obviously inequitable situation, the Legislature in 1951 passed the Police Tenure Act, ... which extended tenure to police forces of less than three members in boroughs, incorporated towns and townships of the first class and to all police forces of townships of the second class, regardless of the number employed. This was an expression of public policy to grant job tenure to all police employed by such municipalities regardless of their political classification."
Deskins v. Borough of W. Brownsville , 388 Pa. 547, 549, 131 A.2d 101, 102 (1957) (quoting McCandless Twp. v. Wylie , 375 Pa. 378, 382-83, 100 A.2d 590, 592 (1953) ).
Turning to the district court's other concerns, the court emphasized that individuals who constitute "extra police serving from time to time or on an hourly or daily basis" are expressly excluded from the Borough Code's provisions. As the Third Circuit pointed out, moreover, that exclusion was added to the statute in the post- George timeframe. Still, a close reading of the exclusion reflects that the modifier, "serving from time to time or on an hourly basis," applies only to "extra police." That being the case, the statutory exclusion does not apply to part-time officers who are not "extra police."
Extra police are officers "employed by municipalities to perform only limited duties and are needed in a municipality during certain limited hours to complement the regular police force." Kraftician v. Borough of Carnegie , 35 Pa. Cmwlth. 470, 474, 386 A.2d 1064, 1066 (1978).[7] The relevant facts as summarized by the Third Circuit only indicate that Plaintiffs were part-time officers; they do not suggest that Plaintiffs were extra police. See Petition for Certification at 3. Therefore, the fact that "extra police" are not to be counted as members of a police force is of no relevance in our present consideration.
Separately, to the extent the district court indicated Plaintiffs' hourly wage alone placed them outside the Borough *1025 Code provisions, see DeForte , No. 2:13-cv-00357-MRH, slip op. at 8 (highlighting that Plaintiffs "were paid an hourly wage and received no additional benefits"), it should be observed that an hourly wage is a form of compensation. Therefore, Plaintiffs were "paid a stated salary or compensation for [their] work by the borough." 53 P.S. § 46195 (emphasis added).[8]
Notwithstanding the above, the Borough argues that, here, Plaintiffs were part-time, hourly-paid employees and, as such, would fall outside the scope of the Borough Code's protections even if the Borough's police force is deemed to have had at least three members. See Brief for Appellee at 19. It may eventually turn out that, in light of the specific features of Plaintiffs' employment, they do not qualify for the procedural safeguards of whichever enactment applies to the facts of this case. We note however, that under Petras and the cases on which it relied, the fact of working part time is not dispositive.[9] Furthermore, at least insofar as the Borough Code is concerned, protections are extended to all "person[s] employed" in a borough police force, 53 P.S. § 46190, a category which may extend beyond full-time officers.
In all events, the question of whether the applicable enactment ultimately provides Plaintiffs with procedural safeguards is distinct from the issue of whether Plaintiffs were "members" of the Borough's police force for purposes of determining whether it had at least three members. Hence, the Borough's assertion in this regard is not directly material to our holding that the same test should be used to count police force members under the Tenure Act and the Borough Code, so that all borough police departments are governed by one of the two statutes.
In terms of the test that should be utilized, we find particular salience in the Borough Code's clarification that "members" of a police force are individuals who "devote their normal working hours to police duty or duty in connection with the bureau, agencies and services connected with police protection work, and who are paid a stated salary or compensation for such work by the borough." 53 P.S. § 46195. By contrast, although the Tenure Act states it applies to police forces with "less than three members," 53 P.S. § 811, the act does not otherwise specify a particular meaning for the statutory term, "member." Section 812, in particular, only extends protections to full-time officers, but it does not necessarily follow that only full-time officers should be counted as members. Indeed, the "full time" descriptor does not appear anywhere else in the Tenure Act other than Section 812. Thus, within the confines of the Tenure Act, the *1026 term "member" is not given a particularized meaning.
This state of affairs is not finally problematic, however, because, as explained, the Tenure Act and the Borough Code are broadly in pari materia inasmuch as they both provide employment protections for officers who are members of a borough police force. Hence, while meaning of "member" is not given in the Tenure Act, recognition of the in pari materia status of the two enactments allows us to resolve any uncertainty along these lines by consulting the definition of "member" under the Borough Code, as recited above.[10] Accordingly, we conclude that the Borough Code's "normal working hours" litmus for assessing membership in a police force applies equally to membership in a police force under the Tenure Act.[11]
In sum, then, and in answer to the two-part question forwarded by the Third Circuit: (1) the civil service protections embodied in the Borough Code and the Tenure Act are broadly in pari materia insofar as they are intended to govern all borough police forces; and (2) when calculating the size of a borough police force in any given case, the same test should be used. More particularly, the "normal working hours" criterion contained in the Borough Code should be employed to determine how many members a borough police force has for purposes of deciding whether the Tenure Act's two-officer maximum or the Borough Code's three-officer minimum is implicated.
The matter is returned to the United States Court of Appeals for the Third Circuit.
Justices Baer, Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

Section 1983 authorizes actions against local governments based on deprivations of federal rights under color of state law. See Kowenhoven v. Allegheny Cty. , 587 Pa. 545, 550 n.4, 901 A.2d 1003, 1006 n.4 (2006) (citing Monell v. Dep't of Soc. Servs. of City of N.Y. , 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978) ). The present case involves the interpretation of state law because a federally-protected property interest in continued employment is created, not by the Constitution itself, but by an independent source such as state law. See Adler v. Montefiore Hosp. Ass'n of W. Pa. , 453 Pa. 60, 81, 311 A.2d 634, 645 (1973) (quoting Bd. of Regents of State Colls. v. Roth , 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ).

The Tenure Act comprises Chapter 8, Article IX of the General Municipal Law, which is located in Title 53 of Purdon's Pennsylvania Statutes. At the time of the underlying events, the Borough Code was also reposited in Title 53 of the unconsolidated statutes. The relevant sections were later repealed and re-enacted, as amended, in consolidated form. As such, the Borough Code now appears at 8 Pa.C.S. §§ 101 -3501. See Act of April 18, 2014, P.L. 432, No. 37, § 1. The pre-repeal version, as most recently amended in May 2012, see Act of May 17, 2012, P.L. 262, No. 43, applies to this case, and its provisions are referenced herein.

The latest version of the Borough Code includes a materially identical definition of a police force. See 8 Pa.C.S. § 1170.

Because Plaintiffs worked on a part-time basis, it may at first appear that they cannot avail themselves of Section 812's civil service protections insofar as those provisions only apply to full-time officers. As developed below, however, the Third Circuit expressed that, under this Court's precedent, police officers performing part-time work may, under some circumstances, be considered as having full-time employment where they are available to work on a full-time basis.

Petras adopted a common pleas court's opinion, which is set out in full in the Atlantic Reporter but omitted from the official Pennsylvania Reporter.

The Tenure Act was passed before the 1966 recodification of the Borough Code. That does not alter our analysis, as the three-member minimum appeared in the version in effect when the Tenure Act was passed. See Act of July 10, 1947, P.L. 1621; Borough of Pitcairn v. Westwood , 848 A.2d 158, 161 & n.3 (Pa. Cmwlth. 2004).

Accord Brief for Appellants at 10-11 ("Extra police are not the same as part-time police. Part-time police are members of the police force. They perform the exact same police work on a daily, monthly and yearly basis as full-time members. 'Extra' or 'special' or 'auxiliary' police, on the other hand, are only called in for parades and other similar special events when more coverage and presence than what the normal police force can supply is required."); cf. Deskins , 388 Pa. at 549, 131 A.3d at 102 (recognizing that police officers hired for "casual employment on account of special or temporary circumstances, unusual conditions, and emergencies" might not be covered under the Tenure Act); Petras , 187 A.2d at 174 (referring to officers "employed only on account of special circumstances, unusual conditions or emergencies").

The district court also stressed there was no evidence suggesting Plaintiffs were hired through civil service procedures. See DeForte , No. 2:13-cv-00357-MRH, slip op. at 8. However, the court did not explain how that circumstance related to the question before it - whether civil-service procedures should have been followed in relation to their dismissal. See, e.g. , Petras , 187 A.2d at 172 (recognizing that the Tenure Act applied to an officer's dismissal even where it did not relate to the officer's hiring).

Before the district court, Plaintiffs both alleged they were available at all times to be called into work for the Borough, and they devoted their normal working hours to such police work. See Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment at ¶¶11, 13, 14, 16. The district court rejected those averments, see DeForte , No. 2:13-cv-00357-MRH, slip op. at 9, 12, and concluded as a matter of law that Plaintiffs were not members of a police force covered by the Borough Code. See id. at 13. However, its factual and legal rulings have not yet been reviewed by the Third Circuit.

As a general matter, where, as here, statutory language is not explicit, resort to precepts of statutory construction is warranted. See McGrath v. State Bd. of Nursing , 643 Pa. 281, 290 & n.8, 173 A.3d 656, 661-62 & n.8 (2017) (citing 1 Pa.C.S. § 1921 ). In the present matter, the most salient rule is contained in Section 1932(b) of the Statutory Construction Act, setting forth the mandate to construe, "as one statute," multiple pieces of legislation which are in pari materia . 1 Pa.C.S. § 1932(b).

To the extent the Commonwealth Court's Mullen decision may be read to suggest a different means of determining membership under the Tenure Act, it is disapproved.