# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Renee Romutis, as Executrix      :
of the Estate of Mark Romutis,      :
                Appellant      :
                             :
         v.              :    No. 1689 C.D. 2018
                             :    Argued:  December 9, 2020
Borough of Ellwood City         :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge

**OPINION BY JUDGE BROBSON**           **FILED:  February 10, 2021**

Renee Romutis, as Executrix of the Estate of Mark Romutis, appeals from an order of the Lawrence County Court of Common Pleas (trial court), dated August 27, 2018, which granted summary judgment in favor of the Borough of Ellwood City (Borough) and against (now decedent) Mark Romutis (Chief), who served as a former police chief of the Borough, as to his breach of contract and termination in violation of public policy claims.[2]  Chief asserts the trial court erred

---

[1] This case was assigned to the opinion writer before Judge Brobson succeeded Judge Leavitt as President Judge.

[2] This appeal was initiated by Mark Romutis, who passed away in April 2020 during the pendency of this appeal.  By order dated September 11, 2020, the Court granted an application to substitute his wife, Renee Romutis, in her capacity as Executrix of his estate, as the appellant in this matter.  Although Mrs. Romutis now carries the mantle of appellant herein, she is advancing the claims of her deceased husband.  Thus, for purposes of consistency, we refer to Chief and his arguments throughout this opinion.

in determining that he was an at-will employee of the Borough and that the Borough's elimination of the chief of police position and, thus, his employment, did not violate the Borough Code provision that confined removal of police to just cause grounds.[3] After careful review, we affirm.

## I. BACKGROUND

In 2010, the Borough appointed Chief to the position of chief of police. At the time, the Borough required Chief to complete a physical examination, undergo psychological testing, undergo drug testing, and update his Act 120 certification.[4]

Relevant here, the Borough and Chief executed an employment contract, specifying terms and conditions of employment, in December 2010. (*See* Reproduced Record (R.R.) at 17a-20a (Employment Contract).) As to its duration, Section 2 of the Employment Contract provides: "The parties agree that the appointment of [Chief] as the Chief of Police is an '*at will*' position." (*Id.* at 17a (emphasis added).)

Section 4 of the Employment Contract, titled "Termination," provides in pertinent part:

> A.   By majority vote of Council, the [Borough] specifically retains the right of removal for misfeasance and/or malfeasance. [Chief] may

---

[3] The current Borough Code, 8 Pa. C.S. §§ 101-3501, became effective on June 17, 2014. It replaced the former Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101-48501, repealed by the Act of April 18, 2014, P.L. 432, but maintained many of the former Borough Code's provisions, particularly those relating to civil service for police and fire apparatus operators. Those provisions appeared in subdivision (j) of the former Borough Code, Sections 1 through 1195 of the former Borough Code, 53 P.S. §§ 46171-46195, and now appear in Subchapter J of the current Borough Code, 8 Pa. C.S. §§ 1170-1194.

[4] "Act 120" is oftentimes used informally to refer to the statute known as the Municipal Police Officers Education and Training Act, 53 Pa. C.S. §§ 2161-2171.

be suspended, removed or reduced in rank *for just cause*, which generally includes, *but is not limited to*:

1. Physical or mental disability affecting his daily ability to continue in service, in which case the person shall receive appropriate compensation and an honorable discharge from service.

2. Neglect or violation of any official duty.

3. Conviction of a misdemeanor involving moral turpitude or a felony violation of the Pennsylvania Crimes Code[, 18 Pa. C.S. §§ 101-9546].

4. Inefficiency, neglect, intemperance, immorality, disobedience of orders, or conduct unbecoming an officer.

5. Intoxication while on duty.

6. Engaging or participating in the conducting of any political or election campaign otherwise than to exercise his own right of suffrage.

   . . . .

D.   If the [Borough] shall terminate this [Employment Contract] after the Probationary Period *without just cause*[,] [Chief] will be entitled to salary compensation of six (6) months at the appropriate rate defined herein.  Payment will be in a lump sum payment.

(*Id.* at 18a (emphasis added).)  The Employment Contract does not address the potential elimination of the position of chief of police.

On May 5, 2014, the Borough Council voted to eliminate the position of chief of police and, as a consequence, Chief's employment.  The Borough Council reaffirmed its prior vote to eliminate the chief of police position on May 12, 2014.  Chief received notice of the elimination of his position by telephone and by letter on May 22, 2014.  Chief did not grieve the elimination of his position or pursue any administrative remedies at that time before the Borough's Civil Service Commission (Commission).

The Borough submitted a release of claims to Chief for his signature prior to tendering the six-month severance payment due for termination of employment lacking just cause.  Chief refused to sign the release or to accept the severance

3

payment. Instead, Chief repeatedly returned the severance payment. In 2015, Chief filed a complaint against the Borough in the trial court. The complaint included several counts related to Chief's discharge. Specifically, Chief alleged the elimination of his position/termination of his employment violated the Employment Contract (Count I) and was against public policy (Count II), as codified in Section 1190(a) of the Borough Code, 8 Pa. C.S. § 1190(a), *formerly* Section 1190 of the former Borough Code, 53 P.S. § 46190(a), which limits the grounds for removal of employees of a Borough police department. Chief also alleged claims of breach of the implied covenant of good faith and fair dealing (Count III) and intentional interference with prospective economic advantage (Count IV).

The Borough filed preliminary objections in the nature of a demurrer, contending, in part, that the entirety of Chief's complaint should be dismissed because Chief failed to exhaust his administrative remedies before the Commission prior to filing suit in the trial court. The Borough also asserted separate grounds for dismissal of Counts II through IV of the complaint. Chief filed a response in opposition to the Borough's preliminary objections. With respect to the preliminary objection based on failure to exhaust, Chief averred: "[Chief] was not a Civil Service Employee. [Chief] was not subject to the rules outlined as a Civil Service hire as a Chief of Police and therefore the . . . Commission did not have jurisdiction over this matter." (R.R. at 42a.)

After argument on the preliminary objections, the trial court overruled the demurrer based on failure to exhaust administrative remedies. (Trial Ct. Order, Aug. 15, 2016, at 1-2, R.R. at 56a-57a.) The trial court also overruled the preliminary objection as to the termination in violation of public policy claim. The trial court sustained the demurrers as to the counts for breach of implied

4

covenant of good faith and fair dealing and intentional interference with prospective economic advantage. Following preliminary objections, then, only the breach of contract and termination in violation of public policy claims remained in the suit. The Borough filed an answer with new matter to the remaining claims, again asserting a failure to exhaust administrative remedies through the Commission. In his reply to new matter, Chief averred that his claim for wrongful termination under Section 1190 of the Borough Code was properly before the trial court because he "was not a civil service employee." (R.R. at 72a.)

The Borough conducted a deposition of Chief, during which Chief admitted that he did not write a letter to the Borough protesting in any way the elimination of his position. (*See* Suppl. R.R. at 19b-20b.) Otherwise, the parties did not exchange discovery. The Borough then moved for summary judgment on the breach of contract (Count I) and termination in violation of public policy (Count II) claims. The trial court held argument on the summary judgment motion. The trial court then issued an order, granting summary judgment in favor of the Borough and dismissing both claims. (R.R. at 124a-39a.) In its accompanying opinion, while the trial court rejected some of the arguments in support of dismissal that the Borough advanced in its motion, the trial court nonetheless reasoned that the breach of contract claim was properly dismissed because Section 4.D. of the Employment Contract allowed termination of Chief's employment "without just cause," provided the Borough paid a lump sum severance payment equal to six months' salary. (R.R. at 18a.) The trial court found that the termination provision of the Employment Contract was unambiguous and that it formalized an "at-will" relationship between the parties.

As to the termination in violation of public policy claim, the trial court rejected the Borough's argument that Chief failed to exhaust his administrative remedies.

5

The trial court reasoned that a borough is permitted to appoint a person as chief of police independent of the civil service rules, that the Borough did so here, and that, as a result, the administrative remedies through the Commission were not available to Chief. (Trial Ct. Opinion, Aug. 27, 2018, at 11-12.) Nonetheless, consistent with its exhaustion analysis, the trial court determined that because the Borough hired Chief outside of the context of the Borough Code's civil service process, as it could do, the civil service protections afforded under the Borough Code, particularly Section 1190(a) of the Borough Code, did not apply to Chief. (Trial Ct. Opinion, Aug. 27, 2018, at 14-15.)

Chief appealed the trial court's order to the Superior Court, which transferred the matter to this Court. We review a trial court's grant of summary judgment for an abuse of discretion or error of law. In so doing, our scope of review is plenary, and we apply the same standard on appeal to the summary judgment motion as before the trial court. *See Albright v. Abington Mem'l Hosp.*, 696 A.2d 1159, 1165 (Pa. 1997). After briefing and argument, the matter is ready for disposition.

## II. DISCUSSION

### A. Contentions

On appeal, Chief argues the trial court erred in granting summary judgment to the Borough because there was an ambiguity in the Employment Contract requiring additional factfinding regarding the employment relationship. He contends the trial court erred in granting the Borough summary judgment on the termination in violation of public policy claim because the Borough Code restricts removal of a police chief to "just cause" grounds, none of which were met here. In advancing this latter argument, Chief relies heavily on this Court's decision in *Braun v. Borough of Millersburg*, 44 A.3d 1213 (Pa. Cmwlth.),

6

*appeal denied*, 55 A.3d 525 (Pa. 2012), which, although briefed by the parties below, the trial court did not address in its opinion. In addition, Chief asserts the trial court erred in deeming him an at-will employee.

The Borough responds that Chief was an at-will employee pursuant to the Employment Contract that permitted termination absent just cause upon payment of severance. Because the Borough tendered the severance payment, the Borough maintains it did not breach the contract. The Borough emphasizes that the six grounds listed for "just cause" termination in the Employment Contract are not the only permitted grounds for terminating Chief's employment, because Section 4.D. of the Employment Contract allows termination *without* just cause. It argues that Chief cannot sustain a claim for termination in violation of public policy. Alternatively, to the extent it was subject to the removal provisions in the Borough Code, the Borough asserts Chief failed to exhaust his administrative remedies through the Commission. The Borough attempts to distinguish *Braun*.

### B. Summary Judgment

To prevail on a summary judgment motion, the moving party must show that it is entitled to judgment in its favor on the asserted claims as a matter of law and that the material facts underlying the claims are not disputed by the parties. *Scheetz v. Borough of Lansdale*, 438 A.2d 1048, 1049-50 (Pa. Cmwlth. 1982). "[S]ummary judgment may be entered only in a case that is clear and free from doubt." *Rossi v. Pa. State Univ.*, 489 A.2d 828, 831 (Pa. Super. 1985).

A non-moving party may not rest on its pleadings; rather, it has an obligation to adduce sufficient evidence on the matters on which it bears the burden of proof. *Ertel v. Patriot-News Co.*, 674 A.2d 1038, 1042 (Pa.), *cert. denied*, 519 U.S. 1008 (1996). In so doing, the non-moving party must show there is a genuine dispute of

7

material fact. *Id.* To the extent there are doubts as to the existence of a genuine issue of material fact, the trial court must resolve such doubts against the moving party and view the record in the light most favorable to the non-moving party.

Here, there is no dispute that the Borough eliminated the position of chief of police which, in effect, removed Chief from his employment. There is also no dispute that the employment relationship between the Borough and Chief is impacted by the Employment Contract, which refers to the relationship as "at will" (Employment Contract § 2, R.R. at 17a) and contains a termination provision regarding termination and removal *without* just cause (*Id.* § 4.D., R.R. at 18a). Further, as noted above by reference to Chief's filings below, there is no dispute that the Borough hired Chief outside of the civil service process set forth in the Borough Code. These undisputed facts inform our disposition of this appeal.[5]

## C. Analysis

### 1. Breach of Contract

---

[5] This matter was first argued before a three-judge panel of the Court on October 3, 2019. Thereafter, the Court, by per curiam order dated December 17, 2019, directed reargument before the Court *en banc* limited to the following issue:

> Whether a borough police chief hired outside of the statutory procedure set forth in Section 1184(d) of the Borough Code, 8 Pa. C.S. § 1184(d), is, nonetheless, entitled to the protection from removal afforded by Section 1190(a) of the Borough Code, 8 Pa. C.S. § 1190(a), and, if so, whether a former chief asserting such protection must avail him or herself of the administrative remedy before the borough civil service commission prior to challenging his or her removal in court?

We directed the parties to file supplemental briefs on this issue and invited the participation of the Pennsylvania Chiefs of Police Association (Chiefs Association) and the Pennsylvania State Association of Boroughs (Boroughs Association) as *amici curiae*. The Boroughs Association filed a brief, contending that police chiefs hired outside of the procedures of Section 1184(d) of the Borough Code are not entitled to the protections from removal afforded under Section 1190(a) of the Borough Code. The Boroughs Association also argues that any chief asserting such protections must avail him or herself of the administrative remedies set forth in the Borough Code. The Chiefs Association did not file an *amicus* brief.

The trial court recognized that the Employment Contract impacts the employment relationship between the Borough and Chief. The three prerequisites for a breach of contract claim are: (1) a contract; (2) breach of duty imposed by the contract; and (3) resultant damages. *See, e.g.*, *Sewer Auth. of City of Scranton v. Pa. Infrastructure Inv. Auth.*, 81 A.3d 1031, 1041-42 (Pa. Cmwlth. 2013). The trial court construed the terms of the Employment Contract to discern whether the Borough breached a contractual duty when it eliminated the position of police chief and, consequently, ended Chief's employment with the Borough.

The trial court discerned the intent of the parties from the writing itself. It concluded that the terms in Section 4 of the Employment Contract, titled "Termination," were clear and unambiguous. Although the Employment Contract provided grounds for "just cause" termination, which mirrored the just cause removal provisions in Section 1190(a) of the Borough Code, it also expressly permitted termination "without just cause." (Employment Contract § 4.D., R.R. at 18a.)

The trial court did not err when it determined, based on the undisputed material facts, that the Borough was entitled to summary judgment on the breach of contract claim. Chief fails to identify the breach the Borough committed, other than alluding to the public policy underlying the just cause removal provision contained in Section 1190(a) of the Borough Code. The Borough did not breach its contractual duty when it discharged Chief from employment *without just cause*. Where the Borough lacked just cause for termination, as was the case here, the Employment Contract still allowed termination but required a lump-sum payment of severance equal to six months' salary. There appears to be no dispute of material fact that the

9

Borough attempted to tender the severance payment on more than one occasion, but Chief repeatedly refused to accept it.

There is no claim or evidence of unequal bargaining power between the Borough and Chief. Chief does not contend that the Employment Contract amounted to a contract of adhesion. He does not assert unconscionability as a defense to the enforcement of the Employment Contract. *See, e.g.*, *Salley v. Option One Mortg. Co.*, 925 A.2d 115, 119 (Pa. 2007) ("[A] contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it."). To the contrary, Chief negotiated a favorable term in what is otherwise an at-will contract—*i.e.*, a lump-sum severance if he is dismissed for any reason other than for cause. Chief does not contend that the Borough denied any request by him to be hired under the statutory procedure set forth in Section 1184(d) of the Borough Code. In other words, there is no argument or evidence that Chief did not negotiate the terms of and freely enter into the Employment Contract and, as a consequence, forego any protections he would have had if he had been hired under Section 1184(d) of the Borough Code.

Further, Chief did not submit any evidence of a breach of contract by the Borough. Although he contests the Borough's ability to eliminate his position or discharge him for other than "just cause" grounds set forth in Section 4.A. of the Employment Contract, Chief does not claim he had a fundamentally different understanding of the contract terms at the time he agreed to them. The Employment Contract did not guarantee a period of continued employment; as to "Duration," it provided that the relationship was "at will." (R.R. at 17a.) The Borough's termination of Chief's employment, without just cause, was in accordance with

10

Section 4.D. of the Employment Contract. As a result, the trial court did not err in granting the Borough summary judgment on the breach of contract claim.

## 2. Public Policy/Borough Code

We now turn to Chief's claim that even if the Borough's termination of his employment was consistent with the Employment Contract, it nonetheless violated public policy. We readily agree with the trial court that what Chief claims is a public policy argument is, in actuality, an argument that he is entitled to the protection from removal afforded under Section 1190(a) of the Borough Code, which provides:

> (a) General rule.–*No person employed in any police or fire force of any borough may be* suspended without pay, *removed* or reduced in rank *except for the following reasons*:
>
> (1) Physical or mental disability affecting the person's ability to continue in service, in which case the person shall receive an honorable discharge from service.
>
> (2) Neglect or violation of any official duty.
>
> (3) Violation of any law if the violation constitutes a misdemeanor or felony.
>
> (4) Inefficiency, neglect, intemperance, immorality, disobedience of orders or conduct unbecoming of an officer.
>
> (5) Intoxication while on duty.
>
> (6) Engaging or participating in the conduct of a political or election campaign while on duty or in uniform or while using borough property otherwise than to exercise the person's own right of suffrage.
>
> (7) Engaging or participating in the conduct of a political or election campaign for an incompatible office . . . .

(Emphasis added.)[6] The legal question, then, is whether, based on the undisputed material facts, Chief is entitled to this protection. The trial court ruled that he was not, and we agree.

___

[6] The "Removals" provision in Section 1190(a) of the current Borough Code is functionally identical to the prior "Removals" provision in former 53 P.S. § 46190.

11

Section 1190 is found in Subchapter J of the Borough Code, relating to civil service protections afforded to police officers and firefighters. This subchapter, like its predecessor in the prior Borough Code, sets forth a comprehensive scheme for the hiring, promotion, and dismissal of police officers within boroughs.[7] It establishes a civil service commission within every borough that maintains a police force. 8 Pa. C.S. § 1172(a). With respect to the filling of positions on a police force, "except that of chief of police," it provides that the borough council must appoint from a list of eligible candidates certified by the civil service commission. 8 Pa. C.S. § 1184(b). With respect to a vacancy in the office of chief of police, however, Section 1184(d) of the Borough Code separately provides:

> (1) In the case of a vacancy in the office of chief of police . . . , or equivalent official, the council *may* nominate a person to the commission.
>
> (2) The commission shall subject the nominated person to a noncompetitive examination, and, *if the person is certified by the commission as qualified*, *the person* may then be appointed to the position and *shall be subject to this subchapter*.

(Emphasis added.)

As the trial court pointed out in this matter, this Court has held that the civil service procedure for hiring a chief of police set forth in Section 1184(d) of the Borough Code is not mandatory. *See Norristown Fraternal Ord. of Police, Lodge 31 by Santangelo v. Borough of Norristown*, 662 A.2d 1151, 1154 (Pa. Cmwlth.), *appeal denied*, 668 A.2d 1140 (Pa. 1995). This means that a borough can hire its chief of police through this alternative civil service procedure *or not*. If it chooses to do so, and if the commission certifies the appointed candidate as qualified, then, according to the clear and unambiguous language of the statute, that appointed

---

[7] *But see* 8 Pa. C.S. § 1171(a) (relating to nonapplicability of subchapter).

person "shall be subject to" Subchapter J of the Borough Code, which includes the protections from removal afforded by Section 1190(a) of the Borough Code.

As noted above, however, it is undisputed that the Borough did not hire Chief under this alternative civil service process. Indeed, nowhere in his filings below or in his brief on appeal to this Court does Chief allege, let alone establish (a) that the Borough nominated him to the Commission, (b) that the Commission subjected him to a noncompetitive examination, and/or (c) that the Commission certified him to the Borough as qualified for the position of chief of police before the Borough hired him to that position. In interpreting and applying a statute, particularly one as clear and unambiguous as Section 1184(d) of the Borough Code, we must be mindful of what the statute says *and* what it does not say. *Hanaway v. Parkesburg Grp., LP*, 168 A.3d 146, 154 (Pa. 2017); *see also* 1 Pa. C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."). Here, the statute provides that chiefs hired pursuant to the alternative civil service procedures set forth in Section 1184(d) of the Borough Code "shall be subject to" Subchapter J, which includes Section 1190(a) of the Borough Code. It does not provide that borough police chiefs, like Chief here, hired outside of this statutory process enjoy the same protections. To conclude otherwise—*i.e.*, that *all* Borough police chiefs are subject to the protections afforded under Subchapter J of the Borough Code regardless of how they are hired--would render language in Section 1184(d)(2) mere surplusage. *See* 1 Pa. C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."); *see White v. Assocs. in Counseling & Child Guidance, Inc.*, 767 A.2d 638, 642 (Pa. Cmwlth.) (en banc) ("The courts must construe every

13

statute, if possible, to give effect to all of its provisions so that none are rendered mere surplusage."), *appeal denied*, 781 A.2d 151 (Pa. 2001).

This Court's decision in *Braun*, which is very light on detail and analysis, is not to the contrary. In *Braun*, a former borough police chief challenged his dismissal as improper. The former chief claimed, *inter alia*, that the borough removed him from his post for economic reasons, which was not a permitted ground for removal under Section 1190(a) of the former Borough Code, *formerly* 53 P.S. § 46190. The borough filed preliminary objections in the nature of a demurrer, contending that the former chief's wrongful termination suit was deficient because (1) he was an at-will employee, (2) he did not allege that he had civil service protections, (3) he was not a tenured employee, (4) he did not allege that he had employment contract, and (5) he was not part of a bargaining unit. *Braun*, 44 A.3d at 1215. The trial court sustained the preliminary objections and dismissed the former chief's complaint. On appeal, we reversed, concluding that the chief was protected from removal for economic reasons under Section 1190(a) of the former Borough Code. In rejecting the borough's arguments to the contrary, this Court expressly observed: "As the trial court noted, [the former chief's] hiring *was subject to civil service appointment*." *Id.* at 1216 n.6 (emphasis added).

This is not *Braun*. Unlike the trial court in *Braun*, the trial court in this matter overruled the preliminary objections challenging Chief's claim that he was entitled to the protections from removal set forth in Section 1190(a) of the Borough Code. Instead, the trial court here decided that issue on summary judgment, based on undisputed material facts. Critically, in *Braun*, this Court and the trial court found that the former chief in that case was subject to civil service appointment. Here, it is undisputed that the Borough did not nominate Chief to the Commission, that the

14

Commission did not subject Chief to a noncompetitive examination, and that the Commission did not certify Chief to the Borough as qualified prior to his appointment. In short, unlike the former chief in *Braun*, Chief's hiring here was not subject to civil service appointment.

### III. CONCLUSION

For the reasons set forth above, we find no abuse of discretion or error by the trial court in this matter. It appropriately dismissed on summary judgment Chief's breach of contract and termination in violation of public policy claims based on the undisputed material facts. The Borough did not breach the Employment Contract when it terminated Chief for other than just cause and offered him a severance. Further, because it is undisputed that the Borough hired Chief outside of the alternative civil service process set forth in Section 1184(d) of the Borough Code, we cannot extend the protections of Section 1190(a) of the Borough Code to Chief under the guise of "public policy" without acting contrary to the express intent of the General Assembly.

Accordingly, we affirm the trial court's order granting summary judgment and dismissing the remaining counts of Chief's complaint.


_____
P. KEVIN BROBSON, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Renee Romutis, as Executrix :
of the Estate of Mark Romutis, :
                   Appellant :
                          :
         v. : No. 1689 C.D. 2018
                          :
Borough of Ellwood City :

# **O R D E R**

AND NOW, this 10th day of February, 2021, the order of the Court of Common Pleas of Lawrence County, dated August 27, 2018, is AFFIRMED.

 

_____
P. KEVIN BROBSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Renee Romutis, as Executrix of the :
Estate of Mark Romutis, :
                Appellant :
                 :
                 : No. 1689 C.D. 2018
          v. :
                 : Argued: December 9, 2020
                 :
Borough of Ellwood City :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENEE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge


DISSENTING OPINION
BY JUDGE McCULLOUGH                FILED: February 10, 2021


        The uncontroverted evidence of record establishes that the Borough of Ellwood City (Borough) entered into an at-will employment contract with a then chief of police, Mark Romutis (Chief), and terminated his employment without just cause. The Borough did so despite the clear and unmistakable pronouncement by our General Assembly in Section 1190(a) of the Borough Code that "[n]o person employed in any police . . . force of any borough may be . . . removed . . . except for the following reasons," none of which are applicable here. 8 Pa.C.S. §1190(a);[1]

---

       [1] Act of February 1, 1966, P.L. (1965) 1656, *as amended*, *formerly* 53 P.S. §46190(a), repealed by the Act of April 18, 2014, P.L. 432.

*see DeForte v. Borough of Worthington*, 212 A.3d 1018, 1021 (Pa. 2019); *Borough of Pitcairn v. Westwood*, 848 A.2d 158, 160-61 (Pa. Cmwlth. 2004).

Clearly, Section 1190(a) of the Borough Code[2] is a "just cause" or "tenure" provision, and it requires that police officers, including the chief of police, be discharged solely for the reasons enumerated therein. *See DeForte*, 212 A.3d at 1023-24. It is beyond cavil that, as a matter of law, this statute is incorporated into the employment contract between the Borough and Chief. *See DePaul v. Kauffman*, 272 A.2d 500, 506 (Pa. 1971) ("[T]he laws in force when a contract is entered into become part of the obligation of contract with the same effect as if expressly incorporated in its terms."). As a result, the just cause provision negates

---

[2] Section 1190(a) of the Borough Code states as follows:

> (a) *General rule.* -- No person employed in any police or fire force of any borough may be suspended without pay, removed or reduced in rank except for the following reasons:
>
> (1) Physical or mental disability affecting the person's ability to continue in service, in which cases the person shall receive an honorable discharge from service.
> (2) Neglect or violation of any official duty.
> (3) Violation of any law if the violation constitutes a misdemeanor or felony.
> (4) Inefficiency, neglect, intemperance, immorality, disobedience of orders or conduct unbecoming of an officer.
> (5) Intoxication while on duty.
> (6) Engaging or participating in the conduct of a political or election campaign while on duty or in uniform or while using borough property otherwise than to exercise the person's own right of suffrage.
> (7) Engaging or participating in the conduct of a political or election campaign for an incompatible office as provided in section 1104(f) (relating to appointments and incompatible offices).

8 Pa.C.S. §1190(a).

and displaces the at-will section of the employment contract because the at-will section contravenes, and is incompatible with, the well-defined and strong public policy enunciated by our General Assembly in Section 1190(a) of the Borough Code. *See DeForte*, 212 A.3d at 1023-24; *Appeal of Homer*, 170 A.2d 848, 849-50 (Pa. 1961).

Contrary to the conclusion reached by the majority, the comprehensive statutory scheme of the Borough Code provides that the *only* way the Borough could have hired or employed Chief was through the nomination and appointment procedure currently set forth in Section 1184(d)(2) of the Borough Code, 8 Pa.C.S. §1184(d)(2);[3] *see Stumpp v. Stroudsburg Municipal Authority*, 658 A.2d 333-35 (Pa. 1995); *Braun v. Borough of Millersburg*, 44 A.3d 1213, 1215-16 & n.6 (Pa. Cmwlth. 2012). In other words, once the Borough hired Chief and officially appointed him to the position of chief of police, our General Assembly unequivocally mandated that Chief was entitled to receive the protection of the just cause provision. Section 1184(d) of the Borough Code, 8 Pa.C.S. §1184(d), *formerly* 53 P.S. §46184; *see Braun*, 44 A.3d at 1216 n.6; *Appeal of Homer*, 170 A.2d at 849-50.

In arriving at a contrary conclusion, the majority misconstrues Section 1184(d) of the Borough Code, placing undue emphasis on the word "may" as the exclusive basis for its conclusion that the Borough officials possessed discretionary authority to enter into an at-will contract with Chief.[4] However, a plain reading of

---

[3] Section 1184 of the Borough Code, repealed by the Act of April 18, 2014, P.L. 432, *formerly* 53 P.S. §46184.

[4] Section 1184(d) of the Borough Code states as follows:
**(Footnote continued on next page…)**

the statute in its proper context compels the conclusion that, in the event there is a vacancy in the position of chief of police, a borough "may," but does not have to, nominate a chief of police. If the borough decides to go further and "appoint" a chief of police, and the civil service commission "certifies" the chief, Section 1184(d) of the Borough Code unambiguously states that the chief "shall be subject to this subchapter," *i.e.*—subchapter "J" of the Borough Code, which, as the majority concedes, encompasses Section 1190(a) of the Borough Code and the just cause provision. Ultimately, this reading of the Borough Code finds strong support in the case law from our Supreme Court, wherein the Court reiterated "the general rule that municipalities are not permitted to enter into employment contracts absent authorizing legislation." *Stumpp*, 658 A.2d at 334. Quite simply, the position of chief of police is, *per se*, covered and governed by the civil service laws, and the Borough Code contains one, and no more than one, procedure to hire (or enter into a contract with) a chief of police, and that is found in Section 1184(d) of the Borough Code.

Naturally, a borough cannot skirt or subvert the just cause provision of the Borough Code by deciding not to utilize—and to actually violate—Section

---

**(continued…)**

> (1) In the case of a vacancy in the office of chief of police . . . . , or equivalent official, the [borough] council *may* nominate a person to the [civil service] commission.
>
> (2) The [civil service] commission *shall* subject the nominated person to a noncompetitive examination, and, if the person is certified by the [civil service] commission as qualified, the person may then be appointed [by the borough council] to the position and *shall be subject to this subchapter*.

8 Pa.C.S. §1184(d) (emphasis added).

1184(d) of the Borough Code and its directive that a borough follow a specific procedure for hiring a chief of police. *See Deskins v. Borough of West Brownsville*, 131 A.2d 101, 102 (Pa. 1957) ("To construe the statute so as to uphold the position of the [b]orough [c]ouncil would result in the emasculation of the protective provisions of the [statute]. Any municipality would be at liberty to nullify effectively the tenure law by simply appending time limitations to police employment contracts. We will not presume the legislature intended such an unreasonable result."). Instead, the Borough "simply does not have the power under [the] law to enter into contracts of employment that contract away the right of . . . tenure . . . set forth in the enabling legislation." *Stumpp*, 658 A.2d at 334. Consequently, despite the fact that the Borough may not have complied with the formal aspects for hiring Chief under Section 1184(d) of the Borough Code (in bypassing the civil service commission and failing to conduct a competitive examination), the Borough's disobedience cannot escape the grasps of Section 1190(a) of the Borough Code and the fact that the just cause provision protects Chief regardless of the terms of the at-will employment contract. *See DeForte*, 212 A.3d at 1025 n.8 (citing *Petras v. Union*, 187 A.2d 171 (Pa. 1963), for the proposition that the just cause or tenure provisions of the Borough Code and the Police Tenure Act[5] apply to the dismissal of police officers even though the officers may not have been hired through the civil service procedures contained in those statutes). After all, by its very language, the just cause provision applies to each and every "person employed in any police . . . force of any borough," without regard to the manner or means by which a police officer and/or chief is hired, and it is undisputed that Chief was employed by the Borough as part of its police force.

---

[5] Act of June 15, 1951, P.L. 586, No. 144, *as amended,* 53 P.S. §§811-816.

In sum, the freedom to contract on a matter ends where, as here, the terms of the contract stand in diametric opposition to and override explicit public policy. Because the law necessitates that contractual terms must be nullified when they run counter to clearly expressed public policy, I would conclude that the designated representative of the now deceased Chief has adduced sufficient evidence to support a viable claim for wrongful termination. *See McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 286-87 (Pa. 2000). Accordingly, I am unable to subscribe to the rationale adopted by the majority and the legal conclusion that it reaches to affirm the decision of the court below granting summary judgment in favor of the Borough on this claim.

For these reasons, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge