**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1772
_____

EVAN TOWNSEND; WILLIAM DeFORTE,
Appellants

v.

BOROUGH OF WORTHINGTON; KEVIN FEENEY,
Individually and as Mayor of the Borough of Worthington;
BARRY ROSEN, Individually and as a member of Council of the Borough of
Worthington and in his capacity as an elected
constable for the Borough of Worthington;
GERALD RODGERS, Individually and as a Police
Officer of the Borough of Worthington

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 2-13-cv-00356; 2-13-cv-00357)
District Judge: Honorable Mark R. Hornak

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
(April 16, 2024)

Before: HARDIMAN, SMITH, and FISHER, *Circuit Judges*.

(Filed:  April 19, 2024)

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

This case returns after we certified a question to the Pennsylvania Supreme Court and remanded for the District Court to apply the state court's new instructions. In doing so, the District Court again granted summary judgment to Defendants. Essentially for the reasons stated by the District Court in its thorough opinion, we will affirm.

I

Plaintiffs Evan Townsend and William DeForte served as police officers for the Borough of Worthington, a municipality of fewer than 1,000 residents in Armstrong County, Pennsylvania. In November 2012, the Worthington Council voted to fire Townsend and DeForte. At the time of their termination, two other police officers worked for Worthington. After Townsend and DeForte were fired, they sued Worthington under 42 U.S.C. § 1983, alleging that their termination violated the Due Process Clause of the Fourteenth Amendment. They also brought state-law claims against Worthington and its mayor, Kevin Feeney.

The District Court initially granted summary judgment to Defendants. *DeForte v. Borough of Worthington*, 2017 WL 1102653, at *11 (W.D. Pa. Mar. 24, 2017), *vacated*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

*and remanded*, 776 F. App'x 781 (3d Cir. 2019). It held that the Pennsylvania Borough Code,[1] rather than the Police Tenure Act,[2] afforded the relevant civil service protections, but that Townsend and DeForte did not qualify for protection under the Borough Code. *See id.* at *4–7.

On appeal, we asked the Pennsylvania Supreme Court to tell us what test we should use to determine whether the Pennsylvania Borough Code or the Police Tenure Act governed the Worthington police force. *DeForte v. Borough of Worthington*, 2018 WL 8868017, at *4 (3d Cir. Apr. 19, 2018), *certified question accepted*, 189 A.3d 390 (Pa. 2018), *and certified question answered*, 212 A.3d 1018 (Pa. 2019). Answering the question we certified, the Pennsylvania Supreme Court instructed that if at least three officers "devote their normal working hours" to paid police work for a given borough, then the Borough Code's protections govern the police force. *DeForte v. Borough of Worthington*, 212 A.3d 1018, 1025 (Pa. 2019); *see id.* at 1026. But if two or fewer officers "devote their normal working hours" to police work for that borough, then the Police Tenure Act's protections govern. *Id.* at 1025; *see id.* at 1026.

In light of the Pennsylvania Supreme Court's answer, we vacated the initial summary judgment and remanded for the District Court to reconsider Plaintiffs' due process claims. *DeForte v. Borough of Worthington*, 776 F. App'x 781, 782 (3d Cir.

---

[1] At the time of Plaintiffs' termination, these provisions were codified at 3 Pa. Stat. & Cons. Stat. §§ 46171–95. *See DeForte*, 2017 WL 1102653, at *4. They are now codified at 8 Pa. Stat. & Cons. Stat. §§ 1170–94.

[2] 53 Pa. Stat. & Cons. Stat. §§ 811–16.

2019). The District Court then held that the Police Tenure Act governed the Worthington police force, but that Townsend and DeForte did not qualify for civil service protections under the Act. *See DeForte v. Borough of Worthington*, 2023 WL 2726704, at \*14–22 (W.D. Pa. Mar. 31, 2023). The District Court therefore granted summary judgment to Defendants on Plaintiffs' due process claims and declined to exercise supplemental jurisdiction over the state-law claims. *Id.* at \*24. The District Court also granted summary judgment to Defendants on all of DeForte's claims because they were barred by res judicata. *See id.* at \*8–9.

Townsend and DeForte timely appealed.[3] We review the District Court's summary judgment de novo. *McKinney v. Univ. of Pittsburgh*, 915 F.3d 956, 959 (3d Cir. 2019). Summary judgment is proper if the moving parties—here, Defendants—"show[] that there is no genuine dispute as to any material fact," such that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II

### A

The District Court granted summary judgment to Defendants on DeForte's claims, holding that they were barred by res judicata. *DeForte*, 2023 WL 2726704, at \*8–9. As Defendants point out, Plaintiffs failed to raise the issue of res judicata in their opening brief. And because "[a]rguments not raised in an opening brief are forfeited," *Lara v. Comm'r Pa. State Police*, 91 F.4th 122, 140 n.28 (3d Cir. 2024), we will affirm the

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1343. We have jurisdiction under 28 U.S.C. § 1291.

summary judgment against DeForte on that ground. But the prior case that had a preclusive effect on DeForte's claims, *DeForte v. Borough of Worthington*, 364 F. Supp. 3d 458 (W.D. Pa. 2019), *aff'd*, 844 F. App'x 511 (3d Cir. 2021), did not address Townsend's claims, which we must now consider separately.

B

Townsend appeals the summary judgment for Defendants on his claim that his termination violated the Due Process Clause of the Fourteenth Amendment. Townsend contends that he had a property interest in government employment and was unconstitutionally deprived of this property interest when he was fired without process.

"Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Townsend argues that two provisions of state law could have conferred a property interest in continued employment as a Worthington police officer: the Borough Code and the Police Tenure Act.[4] As the Pennsylvania Supreme Court has explained, the Borough Code's civil service provisions apply to borough police forces with three or more members, while the Police Tenure Act's civil service provisions apply to borough police forces with fewer than three members. *DeForte*, 212 A.3d at 1022–23.

---

[4] On appeal, Townsend raises no other source of law that could have created a property interest. We therefore do not address the other legal sources discussed by the District Court. *See DeForte*, 2023 WL 2726704, at *22–23.

5

To decide which statute applies, we must determine how many members Worthington's police force had. The Pennsylvania Supreme Court teaches that "members of a police force are individuals who devote their normal working hours to police duty or duty in connection with the bureau." *Id.* at 1025 (cleaned up). This "'normal working hours' criterion . . . determine[s] how many members a borough police force has for purposes of deciding whether the Tenure Act's two-officer maximum or the Borough Code's three-officer minimum is implicated." *Id.* at 1026.

The Police Tenure Act is the relevant statute because Worthington's police force had fewer than three members. It is undisputed that four officers—DeForte, Townsend, Nicole Traister, and Gerald Rodgers—worked for the Worthington Police Department at the time of Townsend's firing. But Townsend conceded that "[o]nly DeForte and Townsend primarily worked for the Worthington Police Department." Dist. Ct. Dkt. No. 173, at 3. Traister worked for North Buffalo Township as well, and "did not make her position with [the] Worthington Police Department her primary job." *Id.* at 9. And Rodgers served as president of a logging company in addition to working as a patrolman for a different borough's police department. Townsend "admitt[ed]" that Traister and Rodgers "did not devote [their] normal working hours" to Worthington. *Id.* at 8, 9. So at most two officers—DeForte and Townsend—devoted their normal working hours to Worthington. Accordingly, the Police Tenure Act applies.

The Police Tenure Act extends civil service protections to any "person employed as a regular full time police officer." 53 Pa. Stat. & Cons. Stat. Ann. § 812. The test for whether a person is employed as a regular full time police officer "is not the number of

6

days, length of hours, or terms of employment but rather whether or not the duties were such that he was 'available for full employment,' that is on call at any and all times." *Petras v. Union Twp.*, 187 A.2d 171, 174 (Pa. 1963).

We agree with the District Court that Townsend was not a "regular full time police officer" within the meaning of the Police Tenure Act: "Townsend was not actually available for [Worthington] police work while simultaneously employed by other police forces." *DeForte*, 2023 WL 2726704, at *22. While working for Worthington, Townsend was also employed by two other municipal police departments: the nearby North Buffalo Township and Rankin Borough, which is 38 miles away in Allegheny County. These other job duties prevented him from serving as a regular full time police officer for Worthington. *See Mullen v. Borough of Parkesburg*, 572 A.2d 859, 861 (Pa. Commw. Ct. 1990), *disapproved of on other grounds by DeForte*, 212 A.3d 1018.

Townsend testified that he was available "24/7" for each of the three municipalities. App. 472. He said he was especially available "24/7" for Rankin, because "they have a very high crime rate." *Id.* But as the District Court noted, Rankin and Worthington are far apart, so it is implausible that Townsend could have suddenly left a shift in Rankin to report to Worthington. *DeForte*, 2023 WL 2726704, at *21. North Buffalo, by contrast, is only 7.6 miles from Worthington. *See id.* at *20. Townsend testified that, if a problem arose in Worthington while he was working in North Buffalo, he would leave North Buffalo and come to the scene—though "on behalf of North Buffalo," rather than in his capacity as a Worthington officer. App. 461. Yet Townsend points to no evidence in the record that Rankin and North Buffalo authorized him to

7

prioritize his employment with Worthington—or that he could simply leave an emergency in another municipality to address one in Worthington. *See DeForte*, 2023 WL 2726704, at *21. There is thus no genuine fact issue as to whether Townsend was available for full employment by Worthington.

In answering our certified question, the Pennsylvania Supreme Court noted: "It may eventually turn out that, in light of the specific features of Plaintiffs' employment, they do not qualify for the procedural safeguards of whichever enactment applies to the facts of this case." *DeForte*, 212 A.3d at 1025. On this record, specific aspects of Townsend's employment preclude a jury from finding that he qualified for the procedural safeguards of the Police Tenure Act. So we will affirm the summary judgment for Defendants on Townsend's due process claim.[5]

\* \* \*

We conclude by observing that counsel for Appellants devotes several pages of his reply brief to attacking the District Court. For example, he accuses the District Court of being "dismissive of . . . these part-time police officers" and of "lampoon[ing]" them as "buffoons." Reply Br. 7. Counsel also characterizes the District Court as "mock[ing]," "critiquing, ridiculing and demeaning part-time police officers serving small local

---

[5] After granting Defendants summary judgment on all federal claims, the District Court declined to exercise supplemental jurisdiction over the state-law claims and dismissed them. *See DeForte*, 2023 WL 2726704, at *23. Appellants do not argue that supplemental jurisdiction over these state-law claims is proper even after all federal claims have been dismissed. So we will affirm the order dismissing those claims.

8

communities," as is "fashionable . . . in the self-absorbed circles of university-educated people." Reply Br. 8.

Courts of law should be subject to scrutiny and fair criticism by lawyers and the public alike. But counsel's invective went well beyond fair criticism. It was inaccurate, unbecoming, and ineffective. Our review of the record leaves us with no doubt that the District Court carefully and dispassionately analyzed Plaintiffs' claims and explained the reasons for its decision in a thorough opinion. *See DeForte*, 2023 WL 2726704. We will therefore affirm.